[Civ. No. 20614. Second Dist., Div. Three. Apr. 5, 1955.]

BERYL McVEY, Appellant, v. PAUL McVEY,
Respondent.

Hahn, Ross & Saunders for Appellant.

J. George Bragin for Respondent.

VALLÉE, J.—Plaintiff and cross-defendant wife appeals from a judgment awarding defendant and cross-complainant husband a divorce.

Plaintiff filed an action for separate maintenance on the grounds of extreme cruelty, desertion, and wilful neglect

against defendant. Defendant answered and cross-complained for a divorce on the ground of extreme cruelty. Plaintiff answered the cross-complaint. After a contested trial, plaintiff was denied a decree of separate maintenance and defendant was granted an interlocutory decree of divorce. Plaintiff's motion for a new trial was denied.

Plaintiff contends the trial judge had a personal prejudice against an action for separate maintenance and by reason thereof she did not have a fair or an impartial trial. In support of her motion for a new trial plaintiff filed an affidavit made by her in which she stated that: before the case proceeded to trial the judge invited her, defendant, and their counsel into his chambers for a conference; no reporter was present; the judge stated to her that in his opinion a·husband and wife who were separated without possibility of reconciliation should become divorced, that separate maintenance was socially and morally undesirable, that defendant and his counsel had indicated that if she amended the prayer of her complaint to seek a divorce he (defendant) would not contest the action and would consent to the award of substantially all property of the parties and reasonable alimony to her, that she should reconsider her decision as to the type of relief she demanded, that he had not yet heard the evidence and that his decision might be in favor of defendant; that she stated to the judge that her counsel had informed her of the various possible results of the lawsuit but that she knew she had a meritorious case; the judge then suggested that she reconsider the matter in private conference with her own counsel; she considered the matter and conferred with her counsel, but reaffirmed her desire for separate maintenance, and the case thereupon proceeded to trial.

The affidavit further stated that after plaintiff had concluded her case in chief, the judge called counsel for both parties into chambers. No reporter was present. The affidavit said that after the conference, plaintiff was informed by her counsel that the judge had stated: that her case in chief entitled her to a divorce if she would ask for one; that if she would accordingly change her prayer for relief there would be no need to take further testimony and she would get the utmost to which she was entitled; that if she insisted upon separate maintenance, then he (the judge) would hear the testimony on behalf of defendant; that said testimony might convince him that defendant, and not plaintiff, was entitled to relief, with the result that she would

become divorced anyway, she would receive no alimony, and would be awarded less than 50 per cent of the community property. The affidavit continued: plaintiff reiterated that she insisted upon separate maintenance and not divorce; thereupon the trial was resumed, and the court found for defendant and against plaintiff; that she believes she was deprived of a trial by a fair and impartial judge, and the judge had a personal prejudice against granting separate maintenance. The statements in the affidavit were not denied.

The statements in the affidavit with respect to what plaintiff was told by her counsel as to what transpired in the judge's chambers after she had concluded her case in chief are, of course, hearsay. The record does not indicate that at the hearing of the motion for a new trial defendant objected to any part of the affidavit on the ground of hearsay or any other ground. It is now too late to urge, as does defendant, that those statements are hearsay. (*Maguire* v. *Corbett,* 101 Cal.App.2d 314, 315 [225 P.2d 606].) The hearsay statements became competent evidence. (*Fallon* v. *Fallon,* 86 Cal.App.2d 872, 873 [195 P.2d 878]; *Vartanian* v. *Croll,* 117 Cal.App.2d 639, 647-648 [256 P.2d 1022].) An uncontradicted and unimpeached affidavit may not be arbitrarily disregarded. (*Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 118 Cal.App.2d 211, 228-229 [257 P.2d 727].)

A trial judge should not prejudge the issues but should keep an open mind until all of the evidence is presented to him. (*Rosenfield* v. *Vosper,* 45 Cal.App.2d 365, 371 [114 P.2d 29].) When a trial judge sits as a trier of the facts he takes the place of a jury, and his conduct is subject to the same rules, one of which is that before the case is submitted to him he should not form or express an opinion thereon. (*Martin* v. *Martin,* 79 Cal.App.2d 409, 410 [179 P.2d 655].) The language of the court in *Pratt* v. *Pratt,* 141 Cal. 247 [74 P. 742], is applicable to the present case (p. 252):

"The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand."

A judge must not place himself in an attitude of hostility to the law or to a party. Where a wrong has been done for which the law affords more than one remedy, the question whether a party shall seek one remedy rather than another rests alone with him. The courts have nothing

to do with the matter, however much the judge personally may disapprove of the action, except to enforce the law. ▉ If under the law a party has a good cause of action and the law gives him more than one remedy, the judge should not for any reason assert that the action should not have been brought or that the party should not have asked for the relief he seeks. ▉ While a judge is not obliged to approve every statute or precedent by which his decision is governed, it is nevertheless his sworn duty to enforce it in a proper case.

▉ When a spouse has a cause of action for divorce the statute expressly gives him or her a right of action for permanent support and maintenance without applying for a divorce. (Civ. Code, § 137.) The statute has been on the books since 1872. It was the duty of the trial judge to enforce the statute if plaintiff established a cause of action.

In *Hiner* v. *Hiner*, 153 Cal. 254, it is said (p. 256 [94 P. 1044]):

"The policy of the law, as illustrated by the enactment of section 137, is to afford the wife, when cause for a divorce exists under section 92, the right to enforce support from her husband, which springs from the marital *status*, without praying for or requiring a total dissolution of such *status*. . . . [P. 257.] The policy of the present age, following an instinct of humanity and justice, and crystallizing it into legislative enactment, has been to afford facilities to the wife to compel the delinquent husband to discharge his marital duty of support without seeking a divorce, and no one has ever deprecated the justice or wisdom of the provision except the delinquent husband himself. Particularly in this country has the doctrine of our courts and the legislation of the states furthered that right."

▉ It is apparent that plaintiff did not have a fair trial of her cause by reason of the preconceived and declared aversion of the trial judge to an action for separate maintenance. Plaintiff was faced with the handicap of his predetermined disposition of that issue regardless of her proof. Thus, before he had heard any evidence, he stated that a husband and wife who were separated without possibility of reconciliation should be divorced, that if plaintiff would seek a divorce defendant would not contest the action and she would be awarded substantially all of the property and reasonable alimony, that he had not heard the evidence and that his decision might be in favor of defendant. And after

she had made her proof, he stated her case entitled her to a divorce if she would ask for one; if she would change her prayer there would be no need for further testimony and she would get the utmost to which she was entitled; and if she insisted on separate maintenance he would hear the testimony of defendant, and that testimony might convince him that defendant, and not plaintiff, was entitled to relief. The dominating factor in deciding the case seems to have been the trial judge's bias and prejudice against an action for separate maintenance. On the cold record, plaintiff established a strong case for separate maintenance; defendant, a weak case for divorce. Whether there was any corroboration of defendant's testimony is a doubtful question. It would appear from what the judge said after plaintiff had made her proof, which he said entitled her to a divorce, that he had made up his mind not to award her separate maintenance. Plaintiff had to proceed under the handicap of a preconceived and declared disinclination of the judge to award her the only relief which she sought. Such conduct on the part of a trial judge indicating his unsympathetic attitude toward the litigation does not accord with recognized principles of judicial behavior consistent with the presentation of a case in an atmosphere of fairness and impartiality, and it cannot be condoned.

 Whether the error complained of has produced substantial injury to the appellant is always a proper question for consideration on review. (*Webber* v. *Webber*, 33 Cal.2d 153, 155 [199 P.2d 934].) While a judgment should not be reversed unless after an examination of the entire record it appears that the alleged error ''has resulted in a miscarriage of justice'' (Const., art. VI, § 4½), such is the situation here, as evidenced by the declared attitude of the trial judge.

In view of our conclusion, it is unnecessary to discuss other grounds for reversal urged by plaintiff.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.