[Civ. No. 10325.   Third Dist.   Mar. 13, 1962.]

JOHN BELLASI, Plaintiff and Respondent, v. WALTER S. SHACKELFORD et al., Defendants and Appellants.

McAllister & Johnson and Neil R. McAllister, Jr., for Defendants and Appellants.

Beverly, Weidman & Riley and Melvin E. Beverly for Plaintiff and Respondent.

PIERCE, J.—Respondent, an owner of real property, sued under the statutory declaratory judgment provisions (Code Civ. Proc., § 1060 et seq.) for a determination that escrow instructions simultaneously filed by himself and defendants did not match and that his offer to sell was revoked prior to defendants' acceptance. Appellants, cross-complaining, contended a binding contract was in effect. The record discloses the following:

Appellants Shackelford, husband and wife, negotiated to buy 84 acres from respondent Bellasi for $6,000. On August 28, 1959, both filed their escrow instructions with the title company. No written agreement preceded this transaction. The respective instructions filed evidence that there was then no meeting of the minds because Bellasi, the seller, filed a deed *reserving a life estate* in the lands and this same reservation was expressed in his instructions. On the other hand, the instructions of the buyers, the Shackelfords, specified that they would accept a deed containing a clause giving the grantor *"the right to live in the house* situate on the subject property for the rest of his natural life."* (Emphasis ours.) Appellants contend that the difference in instructions was due to a mistake of the title company. However, there was no satisfactory evidence of any agreement by Bellasi to sell on the terms limited to house occupancy as prescribed by the Shackelfords and the court found no such agreement.

There was no change in the instructions during a two months' period. On October 23, 1959, the title company issued its preliminary report revealing a description uncertainty. A survey was required to obtain an insurable title in the buyers.

Then, on December 21, 1959, Bellasi employed an attorney and the two went to the title company and orally revoked the offer to sell and demanded back the deed and the "seller's" instructions. The latter contained a provision they were to be

"effective for 30 days and thereafter until revoked by written demand on you," and the title company therefore refused the demand and got in touch with Mrs. Shackelford. On December 22, 1959, appellant Geneva Shackelford talked to Mr. Chadwick, the manager of the title company, told him she did not want to cancel the escrow and at that time filed a written consent to respondent's reservation of a life estate and also agreed to pay the cost of a survey to obtain an accurate property description. On December 23, 1959, Bellasi delivered to the title company a written revocation of his instructions and demand for return of the deed.

The trial court, under these facts, found and adjudged that no contract was created or existed and that the buyers should take nothing by their cross-complaint. We will affirm this judgment.

Appellants argue that Bellasi's escrow instructions by their terms provided that they could only be revoked in writing; that this provision binds Bellasi; that the offer, therefore, remained open notwithstanding the oral revocation and was accepted to complete the contract before the written revocation.

The position of respondent is that his offer was without consideration and therefore was revocable at any time; that an agreement not to revoke an offer is not binding; that revocation communicated orally is sufficient; and that communication to an agent binds the principal. We find these contentions sound.

In *Roth* v. *Moeller,* 185 Cal. 415 [197 P. 62], where an offer to exchange properties provided it should become null and void if not accepted within ten days during which period the offer was to remain irrevocable, the court declared, on page 419:

". . . This offer to Richardson and the agreement not to revoke it were made without consideration, and the offer was therefore revocable at any time before acceptance, for it is elementary that an agreement not to revoke a bare offer is not binding." (See also *Bullock* v. *McKeon,* 104 Cal.App. 72, 78 [285 P. 392].)

■ Since an *unqualified* stipulation without consideration not to revoke an offer *at all* for a specified period is not binding, neither is a stipulation not to revoke *except in writing*.

■ An offer is revoked by communication of notice of revocation. Communication of such notice may be in the same

manner as communication of consent (Civ. Code, § 1587), which is "by some act . . . of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication." (Civ. Code, § 1581.) An oral communication meets this requirement.

Appellants concede that the title company acted as the agent of both parties. Communication of the notice of revocation to the title company, the agent, therefore, equals notice to the Shackelfords, its principal. (*Chapman College* v. *Wagener*, 45 Cal.2d 796, 802 [291 P.2d 445]; Civ. Code, § 2332.) Indeed the inference is strong here that the Shackelfords had *actual* notice and knowledge, since Mr. Chadwick got in communication with Mrs. Shackelford as soon as he received notice of revocation to ascertain from her whether she was willing to cancel the transaction.

The oral notification given by respondent on December 21, 1959, was sufficient. The written notice of revocation given December 23, 1959, was unnecessary, and the intervening "acceptance" by the Shackelfords on December 22, 1959, was unavailing.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.