Kenneth A. FREEMAN, Appellant,

v.

Foley A. FREEMAN, Appellee.

No. 13335.

District of Columbia Court of Appeals.

Argued Dec. 7, 1978.

Decided Jan. 31, 1979.

Richard S. Bromberg, Washington, D. C., for appellant.

John C. Maginnis, III, Washington, D. C., for appellee.

Before NEBEKER, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

Kenneth Freeman appeals from a trial court order of February 27, 1978, which (1) continued for 120 days the suspension of a March 16, 1976, order requiring Mr. Freeman to pay $350 in monthly child support, and (2) ordered Mr. Freeman, commencing March 1, 1978, to pay monthly child support at the rate of $50 per week (through the Clerk of the Family Division) until further order of the court. Finding no error, we affirm.

### I.

Incident to an April 1976 divorce, Kenneth and Foley Freeman stipulated that Mrs. Freeman would have custody of their two minor children and that Mr. Freeman would pay $350 in monthly child support. On January 3, 1977, Mr. Freeman filed a Motion to Suspend or Reduce Support Payments, alleging that although he was earning $24,000 per year at the time of the divorce decree, he was now relying on monthly unemployment compensation benefits of $382.70. On January 25, 1977, the court suspended Mr. Freeman's child support payments for 60 days and ordered him "to actively seek employment" and to maintain records of his efforts for purposes of financial review by the court.

On May 3, 1977, the trial court approved a consent order continuing suspension of the $350 monthly payments for another 120 days but ordering Mr. Freeman, during the interim, to pay $100 per month. The parties submitted to a similar consent order on August 24, 1977, pending a financial review scheduled for February 14, 1978.

At the February 14 hearing, counsel for Mr. Freeman requested continuation of the $100 monthly payment arrangement for another six months. Counsel for Mrs. Free-

man objected, arguing that Mr. Freeman, still unemployed, was out of compliance with the court's earlier order directing him actively to seek employment. The court thereupon conducted a financial examination of Mr. Freeman, who testified that he had a masters degree in public health from Johns Hopkins University, that shortly after the divorce and child support order he had quit his $24,000 per year job at University Research Corporation, that he had continued to pay $350 in monthly support payments for awhile out of savings, that he was writing a book ("which is very important to me"), that he more recently had held a janitorial job but had quit after several weeks, and that for the past 5½ months he had made "minimal efforts" to find employment commensurate with his skills, preferring instead to stay home with the new baby of his second marriage while his second wife worked to support the family (earning approximately $24,000 annually).

When the hearing resumed on February 21, 1978, the trial court indicated that the purpose of the financial review was to consider Mr. Freeman's original motion of January 3, 1977, to suspend or reduce support payments. The court made the following findings:

> [I]t appear[s] to this Court that defendant, although he currently is not receiving any income by reason of being employed, does provide "baby-sitting" services for the child born of his present marriage which enables his present wife to earn an income of $24,000.00 annually; that upon the basis of the applicable minimum wage law, defendant's "baby-sitting" services are valued at least $400.00 per month; that, the former wife of defendant, who has custody of the minor child[ren] born of her and the defendant, earns $12,000.00 annually as a paralegal; that, pending the financial review ordered herein, an equitable contribution of the defendant to the support of the said minor child[ren] based upon the defendant's "baby-sitting" services and his cur-

rent wife's income and upon the former wife's income and the said minor child[ren]'s needs, is found to be $50.00 per week.

The court thereupon continued suspension of the March 16, 1976, order for 120 days, ordered Mr. Freeman to "continue his efforts to obtain gainful employment commensurate with his abilities and educational background," and ordered him to pay monthly child support commencing March 1, 1978, at the rate of $50 per week.

## II.

Mr. Freeman argues that the trial court erred in imputing babysitting income to him so as to increase his interim support obligation from $100 to $200 per month. We disagree.

In the first place, appellant has the burden of proof on his motion to reduce his monthly child support payments. *See Tennyson v. Tennyson*, D.C.App., 381 A.2d 264, 266 (1977). He does not argue that there has been a change in the children's needs or in his first wife's ability to provide financial support; thus, he must show that he remains unable to pay the $350 per month stipulated as part of the divorce decree.

Second, while it is true, as Mr. Freeman contends, that an order of child support must take into account a parent's ability to pay, *see Brown v. Brown*, D.C.App., 343 A.2d 59 (1975) (per curiam); *Truslow v. Truslow*, D.C.App., 212 A.2d 763 (1965), it is well established that a parent subject to a court order to support children cannot escape that duty by voluntarily reducing his or her income, either by a self-imposed curtailment of earning capacity (here, resigning from a $24,000 per year job), *see Tydings v. Tydings*, D.C.App., 349 A.2d 462 (1975) (per curiam) (husband retired early and remarried), or by starting a second family. *Hamilton v. Hamilton*, D.C.App., 247 A.2d 421 (1968); *Armstrong v. Armstrong*, D.C.App., 241 A.2d 735 (1968); *Kep-*

*hart v. Kephart*, 89 U.S.App.D.C. 373, 193 F.2d 677 (1951), *cert. denied*, 342 U.S. 944, 72 S.Ct. 557, 96 L.Ed. 702 (1952). It follows that, when a parent under a child support order quits a well paying job, the ability to pay is not merely a function of actual earnings but is to be derived, more broadly, from earning capacity in the current job market, given one's educational background and work experience.

In the present case, the trial court valued Mr. Freeman's ability to pay by reference, first, to his role as a babysitter, not to the professional roles for which he is qualified.[1] It was not unreasonable for the trial court to find that Mr. Freeman's babysitting services were worth $400 per month; and it is irrelevant whether this value was derived by reference to what he could earn as a babysitter in the community or by deeming his in fact to be earning $400 per month from his second wife, on the theory that she would have to be paying someone else to babysit if not Mr. Freeman. Second, Mr. Freeman in effect conceded that his second wife's $24,000 income provided support for his own needs. Thus, the trial court properly could view the $400 per month earnings imputed to Mr. Freeman as being substantially available for child support.

In challenging the propriety of the court's use of imputed babysitting income, Mr. Freeman implicitly attacks the trial court's reliance, more broadly, on his present wife's income as the basis for concluding that at least $200 of the $400 was available for child support. We find no error here. The trial court did not hold—nor do we—that a second wife's income can be deemed generally available to support a husband's children by a former marriage. The point is, rather, that if Mr. Freeman's ability to pay, under the circumstances, can be derived from his earning capacity in the current job market, given his educational background and work experience—a full accountability the trial court did not impose, *see* note 1, *supra*—it was not errone-

---

1. Thus, the trial court did not hold appellant fully accountable for failing actively to seek employment pursuant to the court's order of January 25, 1977.

ous for the trial court to conclude that under present circumstances Mr. Freeman could afford $50 per week. By focusing on appellant's current situation, rather than on the hypothetical situation of a well-educated, experienced person who quit a $24,000 job, the court accepted appellant's own premise for his lifestyle and determined what he realistically could afford.

Accordingly, we hold that the trial court did not abuse its discretion in concluding that Mr. Freeman had the present ability to pay approximately half his imputed earnings, *i. e.,* $50 per week, to support his two children.[2]

*Affirmed.*

2. Appellant also argues that the trial court's order directing him to seek "gainful employment commensurate with his abilities and educational background" violates his constitutional rights, including his "Thirteenth Amendment right against involuntary servitude." This contention has no merit.